on behalf of Petitioner-Kaburu, I would request two minutes of time for the Court to hear Samuel Mina. Samuel Mina, Jr. Good morning. My name is Samuel Mina. I'm appearing on behalf of Petitioner-Kaburu. Sometimes it's a little hard to hear in this courtroom just because of the acoustics. So if you can speak closer into the microphone, we'll try to do the same. Certainly. My name is Samuel Mina. I'm appearing on behalf of Petitioner-Kaburu. You still have to do it a little louder to get it reaching. I really would think of shouting. I'll try that, Your Honor. My name is Samuel Mina. I'm appearing on behalf of Petitioner-Kaburu. I would request two minutes of time left for rebuttal at the end of my opening. All right. You have a clock there, and I'll try to help you as well. Thank you. This case was denied by the immigration judge. It was subsequently affirmed without opinion by the board. The judge did not make an explicit credibility finding. She did have an issue with one omission that Petitioner failed to make with regard to a claim that she'd made a report. In the end, though, the judge did not make an adverse credibility finding. The judge relied in great part on the proposition in Arriaga-Barrientos that anonymous threats with nothing more cannot constitute a claim for asylum. In this case, however, Kaburu did not receive simply anonymous threats. She received threats on numerous occasions from a local businessman as well as government of Kenya officials. Over the course of several years while working as a forester, she was threatened personally as well as in the course of her duty. She was offered bribes to stop an investigation into the corrupt activities of the government. Could I ask you one question? When I was reading the transcript, the recitation you have in your brief and in the transcript is, you know, it's fairly compelling in terms of this individual suffering some threats and, of course, the House and all. But what I was looking for is evidence that the government was either unwilling or unable to control these people. It seemed to me that also was a stumbling block for the immigration judge. So I'd appreciate it if you could address that. I don't think that that's necessarily a stumbling block. Kaburu did report to the police that she'd been threatened. She reported the fact that her house had burned down or the house that she was living in had been burned down. There were no arrests that were made. She did report to the anti-narcotics department on at least two occasions the threats that she was receiving, and she was told simply not to worry. These people will simply go away. They just want to put pressure on you. She indicated that she was afraid to tell either the prosecutors who were prosecuting the cases, their supervisors, or the judges handling the cases of her threats because she feared that because of the widespread bribery that was going on, they were also involved in that. So if do we have cases? I mean, it presents an interesting question. If you can't really tell people about the situation, then we won't know whether they could fix it or control it or mitigate it. Do we have any cases that help us through that issue? I'm not aware of any cases, but I don't think this is a situation where she did not tell people. She did report to the police. She did report to the anti-narcotics department. With regard to the police, no arrests were made. With regard to the anti-narcotics department, who were actually working with her on these cases, she was told simply not to worry. These people will essentially go away. Let me ask you a problem. If she were just a policeman doing her duty and a gang of gangsters went after her, that would not be a case for political asylum. I agree. Now, how is she different from the ordinary police person doing their job? Well, she's different because she was approached to stop these investigations. I really can't hear you. I'm sorry. She was approached by local politicians and members of Parliament to stop these investigations that she was undertaking. Right. She was offered bribes to essentially go on the payroll of a local businessman so that she can stop. She indicated that she did not believe in what they were doing. She believed in her job and what she was doing, and she did not want to be part of that. So I don't think it's the same thing as a police officer who arrests a gang member and then, out of retaliation, he's receiving threats. She actually expressed an opinion that she was opposed to this corruption, and the threats continued after that. What about the fact that the government or the ruling party in Kenya appears to have changed? The ruling party has changed, but come December 27th, there will be elections again. So I'm not sure that we can draw any conclusions at this point with respect to future prosecution if the Court is inquiring into whether the fact that the National Rainbow Coalition is ruling at this point. Elections are scheduled for December 27th, so I'm not sure that we can really make Is there anything? There's nothing in the record on this change of parties, is there? No. There's nothing in the record with regard to the change of parties. I don't believe so. But at this time, NARC is the ruling party, a coalition of parties. And what if the current ruling party wins the election on December 27th? Well, I don't think that necessarily impacts negatively on this case, because her complaint was not necessarily against the President or national figures in Nairobi. Her complaint was against local politicians who were members of parliament. So she's not complaining that it's necessarily Kano itself, but the fact that the government officials who are in the area growing marijuana locally are the ones who are giving her the problem. In reviewing the IGES decision, she also referred to the fact that the Petitioner did not have any actual evidence. She was simply speculating on the fact that the house was burned. I think the record shows that, in fact, she was threatened not to testify against individuals. She testified against the individuals. Two days later, the house was burned down. After the burning of the house, she did report to police. No arrests were ever made from that. The court also or the IGES also pointed out that she did not seek protection from the threats that she was receiving. Again, the record is very clear that she did go to the police, she did go to the On appeal, the government argues that Petitioner did not really have any fear once she had relocated, that, in fact, because no marijuana was being grown in the new location, and because she'd only been suffering threats from local business people, she did not have any reason to fear. The actual testimony was that although she did move, after the move she was still receiving threats by telephone, she was still receiving threats that she should not cooperate in investigations, and she should not go forward and testify in court. So I don't believe that the government's argument is actually accurate on that point. I think if there are no other questions from the Court, I'll end my time. Take your time for rebuttal. All right. Thank you. Good morning. May it please the Court. Tom Dupree on behalf of the United States. The IJ's conclusions that the Petitioner did not suffer past persecution and did not have a well-founded fear of future persecution are supported by substantial evidence, and the petition for review should be denied. I'd like to begin by addressing the IJ's conclusion that the Petitioner failed to show that either Mr. Marengo, who was the individual who issued the first threat, nor Mr. Kothony, who was the individual who issued the second threat, were State actors. Neither individual was a member of the government. The Petitioner characterized them as independent, wealthy businessmen. But the fact is that these were not threats that were received by Petitioner from members of the Kenyan government. To be sure, the Petitioner contends that the Kenyan authorities were unable or unwilling to protect her, but I think the IJ's conclusion to the contrary is supported by substantial evidence. The Petitioner testified that with regard to the burning of her house, she notified the police. The police arrived. They told her that they would investigate. They did investigate. They came back to her. They told her that they were unable to make an arrest. But that sequence of events certainly does not establish that the authorities were unable or unwilling to address the problem. I think this Court's opinion in the Narvani case, which we cite in our briefs, is very helpful on this point, because what that case says is it says the mere fact that the authorities failed to make an arrest obviously doesn't establish that they were unwilling to protect the Petitioner. In this case, the Petitioner testified that there were no eyewitnesses to the burning of her house, and in fact, when pressed, she admitted that her claim that Mr. Marengo or, excuse me, Mr. Cothoni or his agents were responsible for the burning of her house was speculation. She admitted to that during the examination before the IJ. So for these reasons, I think that the evidence certainly does not compel the conclusion that the Kenyan authorities were unable or unwilling to protect the Petitioner, and conversely, the IJ's conclusion is that she did not prove persecution or well-founded fear for future persecution is supported by substantial evidence. I think it's also relevant to note that in this case, after the Petitioner's house was burned, she left Kenya. She traveled by her own admission to Botswana, where she tried to find employment as a forester, but she was unable to procure employment as a forester, she explained, because she lacked a degree in forestry. She said she stayed for some time in Botswana, but decided not to remain there because the economic conditions were difficult. She then passed through several other countries, including Tanzania and Zambia, before voluntarily returning to Kenya. I think that that sequence of events is powerful evidence that the Petitioner did not fear future persecution in Kenya, because certainly she could have remained in any of those nations, and she was under no obligation to return to Kenya, but she voluntarily chose to do so. Of course, the story concludes with the Petitioner's transfer, at her request, to the Chungoria forest region. After these incidents occurred, she requested a transfer, and the government authorities granted her a transfer. Her new posting, of course, was in a forest area where there was no growing of marijuana, so she wasn't subject to the same sorts of problems that she had experienced in her prior posting. I think that the fact that the government authorities transferred her immediately at her request, again, undercuts any suggestion that they were indifferent to her concerns. And, of course, the fact that she transferred to a new area where there was no marijuana growing supports that she could have and, in fact, did relocate to a separate area of the country where she would not be. But didn't she claim that she still had to testify and, therefore, she was still subject to, you know, concerns for her safety? That's right, Judge Carman. And what she testified to was that she received several telephone threats from Mr. Cothoni in her new posting that threatened her if she were to return. But as this Court had noted, a mere telephone threat in and of itself doesn't compel a finding of persecution. Of course, the plaintiff in this case has never been physically harmed herself. And certainly to the extent that she has several lingering cases that might require her testimony in a different part of the country, I don't think undercuts the notion that she could relocate with safety to another part of the country. Of course, this Court need not reach the relocation issue if it were to conclude that the Petitioner had failed to establish persecution in the first place, which, of course, is our threshold argument. It is troubling. You know, basically, she's got these narcotraffic people who, you know, purportedly were after her, and her testimony is accepted. She makes complaints. Nothing happens. There is a threat, and then two days later her house is burned down. So while she might not have physically been harmed, having your house burned down is a pretty dramatic show of force or authority by someone who is flouting the government authority. So why wouldn't that be sufficient? Well, of course, the Petitioner still hasn't proven the State nexus, either that her house was burned down by government agents. Or by people who the government was unable or unwilling to control. That's exactly right. That's exactly right. And I think there's no doubt that it's not the State here, so it has to be someone with – who is not controlled by or who the government is basically abdicating their duty toward. That's exactly right. And I think the record in this case bears out fairly clearly that, in fact, the Kenyan State is, or at least was at the relevant time, aggressively prosecuting these marijuana growers. In fact, the Petitioner's argument is that her problems really began when the government really started cracking down on these marijuana growers. She testified that they were putting people in jail, they were aggressively prosecuting them, and that was the reason why these criminals were making the threats that they did. So I think the notion that the government is turning a blind eye to this sort of thing and is willing to let its law enforcement agents be subjected to these threats, again, I don't think is borne out from the record. In fact, I think the record is quite clearly to the contrary in this case. Unless there are further questions from the panel, I'll cede the balance of my time and ask that the petition for review be denied. Thank you. Thank you. Do you have some rebuttal time? I'll first address the issue that Petitioner did not face any problems from government officials. In fact, the record shows that at least two of them, Muchegi Murangu, who was a Kano official and a local politician, a Kano being the ruling party at the time, and Captain Buba, who was a member of parliament, was sponsoring the growth of this marijuana. So I don't believe the government is correct in asserting that the Petitioner received problems or threats only from local business individuals. With respect to the house and the burning of the house, although the Petitioner did concede on cross-examination by the judge that she was somewhat speculating, she also did testify that in her compound there were only 15 houses. She had lived there for over two years. During that time, no house had ever burned or caught on fire. She did not have any electricity in the house, so there was no chance or belief she had that the house could have burned by electrical short or some sort of electrical malfunction. Although Petitioner did leave the country voluntarily, she did return to Kenya. After the return, that's when she was relocated at her request. After being relocated, she received additional telephone threats. This is, again, after the house had been burned. She left the country because her house was burned. She came back because she could not find any suitable place to live. After coming back and asking for relocation, she received additional threats. As the Court indicated and pointed out, she still had cases pending that she was needed to testify. And finally, the government of Kenya at the time was aware, and the record shows this in an article that was submitted by the Daily Nation, that the country was having a lot of problems with the exportation and growth of marijuana. And so the government was aware of that, and the government was aware of the fact that there were local politicians and, in fact, national politicians were in the media indicating that they had the belief that the government was aware that these crops were being grown and exported, and was doing nothing about it. So I don't think it's really fair to say that Petitioner was able to get the protection of the government when the government knows what's happening and is not offering her the protection that she needs. And I'll leave with that. Thank you. Thank you. I thank both counsel for your arguments this morning. The case of Kiburu v. Keisler is submitted.
judges: Noonan, McKeown, Korman